118 F.3d 1170
 155 L.R.R.M. (BNA) 2726, 133 Lab.Cas. P 11,834
 Raymond C. DEAN, an individual, Plaintiff-Appellant,
and
Raymond C. Dean & Company, an Illinois corporation,
Defendant-Appellant,
v.
Gerald M. SULLIVAN, et al., Defendants-Appellees.
Gerald M. SULLIVAN, et al., Counter-Plaintiffs-Appellees,
v.
Raymond C. DEAN d/b/a Raymond C. Dean & Company,
Counter-Defendant-Appellant.
 No. 96-4005.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 28, 1997.
Decided July 3, 1997.
 
 Jim R. Sturgeon (argued), Sturgeon & Associates, St. Charles, IL, for Plaintiff-Appellant.
 Paul V. Esposito (argued), Douglas A. Lindsay, Blake T. Lynch, John William Loseman, Michael J. Lybrook, Lewis, Overbeck & Furman, Chicago, IL, for Gerald M. Sullivan, Local 130, U.A. Plumbers' Welfare Fund, Trust Fund for Apprentice and Journeyman Education and Training, Local 130, U.A., Plumbing Council for Chicagoland.
 Paul V. Esposito (argued), Douglas A. Lindsay, Blake T. Lynch, John William Loseman, Michael J. Lybrook, Lewis, Overbeck & Furman, Julian D. Schreiber, Borovsky & Ehrlich, Chicago, IL, for Chicago Journeymen Plumbers, U.A., Local 130.
 Before CUDAHY, ESCHBACH, and FLAUM, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 A loser at commercial or labor arbitration might very well wish to circumvent the arbiter's decision and head unencumbered for the courts. But if final and binding arbitration is to serve its purpose, it must be just that--final and binding. Arbitration would otherwise become little more than a procedural detour, without ultimate significance.
 
 
 2
 Companies and unions in their collective bargaining agreements regularly assent to submitting their disputes to final and binding arbitration. If the losing party refuses to abide by the arbiter's award, the victor may press for enforcement and the loser for vacatur in federal court. Labor-Management Relations Act of 1947, § 301(a), 29 U.S.C. § 185(a). That the arbitration was final and binding does not mean that federal courts will enforce the decision in every case. Yet the potential grounds for refusing enforcement are extraordinarily narrow. This limited form of judicial review guards against the risk of runaway arbiters. It certainly does not license a federal judge to consider the disputants' arguments afresh. As long as the arbiter's award "draws its essence from the collective bargaining agreement," a federal court must enforce the award. United Steelworkers of Am. v. Enter. Wheel and Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). It is enough that "the arbitrator's interpretation can in some rational manner be derived from the collective bargaining agreement." Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731, 990 F.2d 957, 960 (1993). Any more searching inquiry would violate the parties' expectations when they originally acceded to arbitration. Burchell v. Marsh, 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854).
 
 
 3
 And these standards are for arguments that the disputants actually made at arbitration. The scope for a federal court to review tardy arguments is compressed still further, to nil. Such Johnny-come-lately arguments are prohibited. (An argument that could not have been made at the time of arbitration may be a different matter, but that issue is not before us today.)
 
 
 4
 The instant appeal comes burdened with a late argument. Raymond Dean is a plumbing contractor in Cook County. At the time of this suit, Dean was a member of the Plumbing Contractors Association of Chicago and Cook County. The plumbing contractors (through the Association) had a collective bargaining agreement with the Chicago Journeymen Plumbers Local Union 130, U.A. Under the agreement, plumbing contractors contribute a scheduled sum of money to the union's various funds for pensions, education, welfare and legal services. The contractors and union agreed to resolve all disputes by final and binding arbitration before a Joint Arbitration Board with a mix of union and contractor members.
 
 
 5
 Starting with a confidential tip, the auditors for the union funds investigated whether Dean had paid all the money due for January 1, 1988 to May 31, 1991. The auditors checked over his books and reckoned that he owed $47,035.47 to the union funds for an employee claimed to be doing union work. Dean disagreed and went to the Joint Arbitration Board. The Board met three times between March 1993 and February 1994 to hear Dean's complaint. Dean apparently did not like the way the hearings were going. On April 13, 1994, Dean wrote the Board to say that he no longer considered himself bound by arbitration. The Board met for a fourth and last time on October 21, 1994. Though notified of the hearing, Dean chose not to attend. The Board weighed the evidence and ruled that Dean owed $56,967.87.
 
 
 6
 Dean took his dispute to federal court, as permitted by the Labor Management Relations Act of 1947. The union funds counter-sued for enforcement. A magistrate judge considered cross-claims for summary judgment. Dean lost and the union funds won across the board. The accumulation of interest, costs and attorney's fees since arbitration brought the award to $168,767.51.
 
 
 7
 Dean has chosen to appeal one issue. He argues that an alleged procedural error in the arbitral proceedings spoils the validity of the award. The collective bargaining agreement provided that the "Board members present at the hearing shall hear the evidence in the case and shall render a decision." (Emphasis supplied.) From this provision, Dean traces a flaw in the Board's proceedings. For the panelists who actually comprised the Board changed from hearing to hearing. And at the final hearing, only one panelist (Robert Litvin) had been present for all four hearings. The arbitration, Dean says, did not observe the terms of the collective bargaining agreement, and must be presumed void.
 
 
 8
 But Dean never made this argument before the Board. He particularly targets the final hearing, where six of the seven Board members present had not attended the first hearing. He did not object at the time; nor could he have done so, because he elected not to appear.
 
 
 9
 A disputant "cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court. We will not tolerate such sandbagging." Nat'l Wrecking Co., 990 F.2d at 960. See also Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co., 866 F.2d 11, 13 (1st Cir.1989) (per curiam) (finding waiver of claim of arbitrator's personal bias); West Rock Lodge No. 2120, Int'l Assoc. of Machinists and Aerospace Workers, AFL-CIO v. Geometric Tool Co., 406 F.2d 284, 287 (2d Cir.1968) (finding waiver of claim of arbitrator's failure to meet deadline). Dean's refusal to appear before the arbitral Board and his subsequent attack in federal court on the Board's composition is just another species of this sandbagging. Dumas v. Atlas Cork Works, 99 N.Y.S.2d 493 (N.Y.Sup.Ct.1950) (finding waiver where plaintiff refused to appear before arbitrator).
 
 
 10
 A party's choice to accept arbitration entails a trade-off. A party can gain a quicker, less structured way of resolving disputes; and it may also gain the benefit of submitting its quarrels to a specialized arbiter, which, like the union/contractor panel in this case, knows the customs and lore of an industry first-hand. Enter. Wheel and Car Corp., 363 U.S. at 596, 80 S.Ct. at 1360. Parties lose something, too: the right to seek redress from the courts for all but the most exceptional errors at arbitration. That is the deal Dean struck for arbitration. Although it seems to have grown extraordinarily expensive at this point, we hold him to it.
 
 
 11
 Leave is granted for defendants-appellees to file a verified petition for attorney's fees and costs on appeal within 21 days.
 
 
 12
 AFFIRMED.