**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3234
_____

MELISSA LANGLAIS; REBECCA EDMUNDSON;
ROB PERITZ; RACHEL MARTONE; JAIME FARREL;
KATRINA KNIEST; GEORGE MCLAIN

v.

PENNMONT BENEFIT SERVICES, INC.; JOHN J. KORESKO, V;
THE KORESKO LAW FIRM, P.C.;
REGIONAL EMPLOYERS ASSURANCE LEAGUES VOLUNTARY
EMPLOYEES BENEFICIARY ASSOCIATION TRUST;
SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST;
PENN PUBLIC TRUST; REAL VEBA TRUST,
                                        Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-11-cv-05275)
District Judge:  Honorable Mary A. McLaughlin

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 19, 2013

_____

Before:  FUENTES, CHAGARES, and BARRY, Circuit Judges.

(Filed: June 7, 2013)

_____

OPINION
_____

CHAGARES, Circuit Judge.

PennMont Benefit Services, Inc. ("PennMont") challenges the order of the District Court confirming an arbitration award of $3.8 million in favor of the seven appellees. For the reasons stated below, we will affirm the judgment of the District Court.

I.

We write solely for the parties and will therefore recount only those facts that are essential to our disposition. In 2002, Jorli McLain and Wendy Hoffman, owner-employees of a company called everythingforlove.com, signed an agreement to provide the company's employees with death benefits through the REAL VEBA Health and Welfare Plan and Trust. McLain died in 2010, and the appellees filed a claim with plan administrator PennMont to recover on McLain's policy. In September 2010, PennMont denied the claim. The claim denial letter explained that because McLain did not receive a salary for the years preceding her death, she was not considered an employee and thus was ineligible for benefits. The appellees' attorney then contacted John Koresko, PennMont's attorney (and a party to this case), to discuss an appeal of PennMont's decision and the possibility of arbitrating the dispute.

While agreements governing McLain's policy clearly provide for arbitration of a dispute over claims, the parties disagreed about procedural aspects of the arbitration. In November 2010, the appellees filed a demand for arbitration with the American Arbitration Association ("AAA") pursuant to a provision in the governing documents of the benefit plan. Koresko wrote to the appellees' attorney and to an assistant supervisor at the AAA stating that the demand for arbitration was premature because there had not yet been an internal appeal of the claim denial. The AAA proceeded with the arbitration

2

in June 2011, but neither Koresko nor any other person representing the appellants appeared at the arbitration or filed a brief. After the arbitration hearing was held but before the decision was rendered, Koresko sued the AAA, the arbitrator, and the AAA assistant supervisor in order to halt the arbitration process. Those cases were removed to federal court and dismissed. In September 2011, the arbitrator decided in favor of the appellees and awarded them $3.8 million. The appellees moved to confirm the award in District Court. Their motion was granted as to PennMont, though the court declined to consider whether the award should be confirmed against other parties that had not signed the arbitration clause.

The District Court refused to consider most of PennMont's arguments because it concluded that they were waived due to PennMont's failure to appear at the arbitration hearing. It held that the question of substantive arbitrability – whether an arbitrator had jurisdiction over the dispute in question – was the only issue not waived. PennMont now appeals, arguing that the District Court erred in its waiver analysis and in failing to recognize that the arbitrator exceeded his powers.

## II.[1]

The arguments raised in this case require us first to distinguish between questions of substantive arbitrability and procedural arbitrability. As the District Court explained,

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's legal conclusions and review its findings of fact for clear error. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646, 584 F.3d 513, 521 (3d Cir. 2009).

the question of substantive arbitrability arises when we must determine (1) if parties have entered into a valid arbitration agreement, or (2) whether a valid agreement applies to a specific controversy. Appendix ("App.") 21. Unless the parties have clearly agreed otherwise, courts determine whether a certain dispute is substantively arbitrable. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). Yet procedural questions, such as those concerning waiver, delay, or the procedural prerequisites to arbitration, are for the arbitrator to decide. Id. at 84 (explaining that arbitrators should be presented with issues of procedural arbitrability "where parties would likely expect that an arbitrator would decide the gateway matter"); Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 179 (3d Cir. 2010).

A.

The appellees first contend that questions of procedural arbitrability are solely for the arbitrator to decide, and that consequently courts may not address those issues. In support of this argument they cite John Wiley & Sons, Inc. v. Livingston, which held that "'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. 543, 557 (1964).

While the appellees are undoubtedly correct that the procedural arbitrability questions now raised by PennMont were appropriate for review by the arbitrator in the first instance, none of the cases they rely upon establish that questions of procedural arbitrability are not reviewable by a court on a motion to confirm the arbitration award. The appellees have presented no argument as to why questions of procedural arbitrability should be distinguished from questions concerning the merits of the underlying

4

controversy upon review by a District Court. Thus, we conclude that we are not free to ignore questions of procedural arbitrability simply because courts have held that those are questions properly presented to an arbitrator in the first instance.

B.

The appellees assert that even if we reject their argument concerning the reviewability of procedural arbitrability questions, PennMont has waived its procedural arbitrability arguments because of its failure to appear at the arbitration. The District Court agreed with the appellees on this point, holding that "[t]he Koresko Parties cannot refuse to participate in the arbitration and then raise procedural arbitrability objections for the first time in federal court." App. 24. PennMont disputes the District Court's characterization, stating that the issues were raised "in correspondence before the arbitration occurred, presented to the arbitrator in the submissions the petitioners made at the arbitration, and addressed and decided adversely to the respondents by the arbitrator." PennMont Br. 18.

We have held that when a party fails to object to an arbitrator's jurisdiction during the arbitration, the party may not later raise those jurisdictional issues in federal court. Teamsters Local Union No. 764 v. J.H. Merritt & Co., 770 F.2d 40, 42 (3d Cir. 1985). Yet in J.H. Merritt, the party challenging the arbitrability of the dispute in federal court had willingly participated in the arbitration and appeared to object to the arbitrator's jurisdiction only because it had not prevailed before the arbitrator. That case does not squarely apply here because PennMont clearly objected to the timing of arbitration and never accepted the AAA's decision to proceed with arbitration.

The District Court correctly noted that other courts of appeals have faced situations similar to the one before us today. In <u>International Brotherhood of Electrical Workers, Local Union No. 545 v. Hope Electrical Corp.</u>, 380 F.3d 1084 (8th Cir. 2004), one party to the dispute refused to participate in the arbitration, but then filed a motion to vacate the arbitration award. While the Court of Appeals for the Eighth Circuit concluded that it could determine questions of substantive arbitrability, it held that challenges to both procedural arbitrability and to the merits of the arbitrators' decision were waived. <u>Id.</u> at 1099-1101 ( "[W]hether we apply a theory of waiver or merely recognize the fact that arbitrators and not judges are empowered to decide such issues, we refuse to address Hope Electrical's procedural challenges to arbitrability."). The Court of Appeals for the Seventh Circuit reached a similar result in <u>Dean v. Sullivan</u>, 118 F.3d 1170 (7th Cir. 1997). In that case, a union investigated a plumbing contractor for failing to pay money owed to the union, and the dispute was submitted to arbitration. The contractor attended the first three hearings, but then informed the arbitration board he believed he was not bound by the arbitration and failed to attend the fourth hearing. In federal court, he argued for the first time that the arbitration was flawed due to a procedural irregularity during the hearings. The Court refused to consider the argument, explaining that "Dean's refusal to appear before the arbitral Board and his subsequent attack in federal court on the Board's composition is just another species of . . . sandbagging." <u>Id.</u> at 1172.

Like the District Court, we agree with the reasoning of <u>Hope Electrical</u> and <u>Dean</u>. If a party has clearly agreed to arbitrate and has qualms only with procedural issues

6

concerning the arbitration, then it must present those issues to the arbitrator rather than save them for presentation to the District Court. To sanction parties' refusal to participate in arbitration proceedings when procedural issues arise would threaten the very nature of arbitration, which is intended as a "quicker, less structured way of resolving disputes." Dean, 118 F.3d at 1173.

PennMont maintains that even if we agree that waiver is appropriate in certain circumstances, we should not apply the waiver doctrine here because the "issues were **not** raised 'for the first time in federal court,'" as the District Court concluded. PennMont Br. 18 (emphasis in original). As mentioned above, PennMont argues that the issues were properly raised because Koresko made his objections clear to the AAA before the hearing occurred, and because his arguments were contained in materials presented to the arbitrator by the appellees. While PennMont undoubtedly made its position clear, it has provided no case law indicating that a party can avoid waiver of procedural arbitrability arguments simply by demonstrating that an arbitrator was aware of some or all of the issues presented.

It appears that we have not addressed the specific issue of whether a party can raise an issue to an arbitrator by sending preliminary e-mails and filing suit in federal court before the decision is rendered. However, the concerns we have addressed when discussing waiver issues lead us to reject PennMont's contention. We recently reiterated, while discussing appellate waiver of arguments not made at the district court level, that "the doctrine of appellate waiver 'is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues.'" Freeman v.

7

Pittsburgh Glass Works, LLC, 709 F.3d 240, 249 (3d Cir. 2013) (quoting Hormel v. Helvering, 312 U.S. 552, 556 (1941)). Furthermore, we have emphasized that in order to preserve an issue for appeal, a party must present an issue to the district court with some "minimum level of thoroughness." In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 262 (3d Cir. 2009). If anything, it is more important for parties to raise issues for the first time at arbitration because of the limited nature of judicial review of arbitration awards.

Though the appellees must have been aware of PennMont's position that the arbitration was proceeding prematurely, PennMont's argument was not made with sufficient thoroughness. The appellees did not have the benefit of PennMont's appearance at the arbitration to rebut its arguments before the arbitrator. Raising arguments through e-mails and relying on one's adversaries to present those arguments to the arbitrator is insufficient, especially when parties have agreed to allow an arbitrator rather than a court to decide the merits of a dispute. We hold that PennMont failed to raise its objections to procedural arbitrability before the arbitrator. Consequently, we will not review procedural arbitrability arguments that were not raised at arbitration.

C.

Having determined that PennMont's procedural arbitrability arguments were waived because of its failure to appear at arbitration, we must address the same issue as applied to PennMont's disagreements with the merits of the arbitrator's decision. The District Court held that "where the Koresko Parties were notified of but did not appear at the arbitration hearing, review of the merits is foreclosed entirely." App. 9. PennMont has presented no reason why, if its procedural arbitrability arguments are held to be

8

waived, its arguments on the merits should meet a different fate. See Hope Electric, 380 F.3d at 1101 ("To the extent that a particular issue is arbitrable, then, a party cannot refuse to participate in arbitration or fail in arbitration to raise a particular argument concerning the merits of the grievance and later seek judicial resolution of that same issue.").

The only potential basis for distinguishing our review of the merits of PennMont's claim from our review of the procedural arbitrability issue is that the arbitrator possessed PennMont's claim denial letter, allowing him to assess some of the reasoning behind PennMont's decision. While the denial letter was likely helpful to the arbitrator, it was not enough to allow PennMont to avoid waiver. The denial letter essentially described PennMont's interpretation of the relevant agreements and stated that PennMont had determined McLain was not an employee because she earned no money in the years leading to her death, and, therefore, no benefits should be awarded. App. 494-516. Yet the arbitrator was presented with conflicting evidence, some showing that McLain did earn an income in 2010. Id. 525. The arbitrator also found that there was conflicting language in the governing documents that called into question PennMont's claim determination. Id. 527. Of course, these are the disagreements that PennMont could have addressed had it appeared at the arbitration or in a brief filed with the arbitrator. The claim denial letter simply did not suffice to give the arbitrator or the appellees a reasonable opportunity to respond to PennMont's factual and legal contentions. Therefore, we agree with the District Court that PennMont waived its arguments concerning the merits of the arbitrator's decision.

9

## III.

For these reasons, we will affirm the judgment of the District Court.