**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1584
_____

SPINEWAY SA,
                          Appellant

v.

STRATEGOS GROUP LLC
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:22-mc-00604)
U.S. District Judge:  Honorable Jennifer L. Hall
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 13, 2025
_____

Before: SHWARTZ, KRAUSE, and CHUNG, <u>Circuit Judges</u>.

(Filed:  March 18, 2025)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Spineway SA appeals the District Court's order denying its petition to confirm a foreign arbitration award. Because the arbitral tribunal that issued the award was not the one the parties selected to hear their disputes, we will affirm.

I

Spineway, a medical device company, and Strategos Group LLC, an investment firm, entered a contract to sell Spineway products. Relevant here, the contract provides:

> The [Contract] shall be governed and interpreted in accordance with French law.

> Any dispute resulting from or relating to this [Contract] will be resolved via a final decision issued in accordance with the Mediation and Arbitration Rules of the Geneva International Chamber of Commerce by one (1) arbitrator appointed in accordance with these Rules (such arbitrator being hereinafter referred to as the "Arbitral Tribunal").

> The Arbitral Tribunal shall sit in Geneva (Switzerland) and arbitration shall take place in the French language.

> The Arbitral Tribunal shall settle the dispute pursuant to French law.

App. 311 (emphasis omitted).

After a dispute arose, Spineway discovered, and the parties agree, that neither the Geneva International Chamber of Commerce ("Geneva ICC") nor its rules exist. As a result, Spineway filed an arbitration claim before the Swiss Chambers' Arbitration Institution ("SCAI"). Strategos received notice of the claim but, on the advice of counsel, did not appear or participate in the arbitration because Strategos believed the parties' contract did not authorize the SCAI to arbitrate the dispute and that they intended for the International Chamber of Commerce ("ICC") in Geneva to handle it.

2

SCAI appointed an arbitrator (the "Arbitrator") in accordance with its rules. The Arbitrator determined he had jurisdiction over the dispute and rendered an award favorable to Spineway. Spineway then filed a petition to confirm the award in the United States District Court for the District of Delaware, where Strategos is incorporated.

The District Court denied Spineway's petition because, among other things, it found that the parties intended to select the ICC and ICC rules for the arbitration and, therefore the proceeding before the SCAI "was not in accordance with the agreement of the parties." App. 8 (quoting Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. V(1)(d), June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 ("New York Convention")).

Spineway appeals.

## II[1]

### A

As a threshold matter, we first address whether Strategos's failure to participate in the arbitration bars it from challenging the arbitrator's authority.[2] It does not. A party

---

[1] The District Court had jurisdiction under 9 U.S.C. §§ 202-203 and 28 U.S.C. § 1331. We have jurisdiction under 9 U.S.C. § 16 and 28 U.S.C. § 1291. "On review of a petition to confirm an arbitration award, this Court reviews a district court's factual findings for clear error and its legal conclusions de novo. We review de novo a district court's interpretation of the New York Convention." Jiangsu Beier Decoration Materials Co. v. Angle World LLC, 52 F.4th 554, 559 (3d Cir. 2022) (citation omitted).

[2] Had Strategos participated in the arbitration without objecting to the Arbitrator's authority, it may have waived its right to object to the arbitration. Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 368 (2d Cir. 2003) (explaining that "[a]lthough a party is

3

contending that "it is not bound by an agreement to arbitrate" may "simply abstain from participation" in the arbitration proceedings and then later object to the arbitration award. MCI Telecomms. Corp. v. Exalon Indus., Inc., 138 F.3d 426, 430 (1st Cir. 1998); see also Langlais v. PennMont Benefit Servs., Inc., No. 2-11-CV-05275, 2012 WL 2849414, at *5 (E.D. Pa. July 11, 2012) ("[A party need not] appear before the arbitrator and raise their substantive jurisdictional challenges in order to preserve them."), aff'd, 527 F. App'x 215 (3d Cir. 2013) (not precedential).[3]  Therefore, Strategos did not waive its objection to the Arbitrator's jurisdiction by not appearing in the arbitration.[4]

B

As a result, we will review whether the District Court appropriately declined to enforce the Arbitrator's award.  Because we are reviewing the enforceability of a foreign arbitration award, we apply the terms of the New York Convention.  See Jiangsu Beier Decoration Materials Co. v. Angle World LLC, 52 F.4th 554, 559-61 (3d Cir. 2022).

---

bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct . . . . [and therefore] if a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration" (internal quotation marks and citation omitted)).

[3] The waiver analysis under U.S. law does not appear to differ based on the foreign or domestic character of the arbitration.  See China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp., 334 F.3d 274, 290 (3d Cir. 2003) (rejecting party's argument that waiver analysis is different in cases arising under the New York Convention compared to those arising under the Federal Arbitration Act ("FAA")).

[4] While we cite to domestic law, we need not decide whether domestic or Swiss law applies because the result is the same under either sovereign's laws.  See App. 787-89 (explaining that under Swiss law, a party who has refused to participate in an arbitration may still object to the arbitrator's jurisdiction in a subsequent enforcement action).  Neither party argues that French law—the law which governs the contract and its interpretation—applies.

4

Under the New York Convention, "enforcement of [an arbitral] award may be refused" if, among other things, "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties." New York Convention, art. V(1)(d); see also 9 U.S.C. §§ 201-208 (implementing the New York Convention).[5] To assess whether this ground for non-enforcement exists, a court examines the arbitration agreement's language and applies the governing principles of contract interpretation. See, e.g., Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam, 687 F.3d 163, 169 (3d Cir. 2012) (parsing arbitration agreement's forum selection clause in determining whether grounds for refusal to compel arbitration existed under Article V(II)(3)); see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90-91 (2d Cir. 2005) (examining the plain text of the parties' agreement in assessing whether arbitral panel was selected in accordance with said agreement).[6]

---

[5] The FAA "is applicable to actions brought under the [New York] Convention . . . to the extent they are not in conflict." China Minmetals, 334 F.3d at 280 (citing 9 U.S.C. § 208).

[6] We owe no deference to a putative arbitrator's determination regarding its jurisdiction to hear a dispute because an arbitrator has only the power granted to him by the parties' contract. See China Minmetals, 334 F.3d at 288 (3d Cir. 2003); see also Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos, 25 F.3d 223, 226 (4th Cir. 1994) (holding that courts owe no deference to an arbitrator's interpretation of his own jurisdiction under the parties' contract); Int'l Bhd. of Teamsters, Loc. 249 v. W. Pa. Motor Carriers Ass'n, 574 F.2d 783, 787 (3d Cir. 1978) ("[A]n arbitrator's decision that he has authority should not be accepted where the reviewing court can clearly perceive that the [parties'] agreement does not grant him that authority." (internal quotation marks and citation omitted)).

The parties agree that (1) French law governs the interpretation of their contract,[7] and (2) under French law, a court interprets a contract by "looking . . . for the true common intent of the parties," App. 794, and may consider extrinsic evidence such as a document's drafting history. The record shows that the District Court did not clearly err in finding that the parties intended that (1) the ICC, not the SCAI, would select the arbitrator and (2) the ICC, not SCAI, rules would govern. See, e.g., App. 353, 800 (declarations offered by Spineway and Strategos explaining that the initial draft of the arbitration agreement selected "the International Chamber of Commerce" to administer the arbitration and a Geneva arbitral venue); App. 797 (declaration offered by Strategos's French law expert explaining that the drafting error in the executed contract is common and that several arbitrators have found the "International Chamber of Commerce in Geneva" referred to the ICC); App. 6 (Dist. Ct. Op. crediting this aspect of the French law expert's testimony because Spineway failed to challenge it).[8] Because the Arbitrator was selected under the SCAI rules, and this was not in accordance with the parties' agreement, the District Court properly refused to confirm the award under Article

---

[7] See App. 311 ("The [Contract] shall be governed and interpreted in accordance with French law."); Gay v. CreditInform, 511 F.3d 369, 388-89 (3d Cir. 2007) (explaining that we respect "choice-of-law provisions governing agreements, including agreements to arbitrate").

[8] Spineway has not disputed these factual findings before us and has thus waived any challenge to them. See United States v. Pellulo, 399 F.3d 197, 222 (3d Cir. 2005) ("[A]n appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

V(1)(d).[9]  See Encyclopaedia Universalis, 403 F.3d at 91-92 (refusing to confirm award under New York Convention Article V(1)(d) where arbitral body had not been appointed in accordance with parties' agreement); Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos, 25 F.3d 223, 226 (4th Cir. 1994) ("Arbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated.").

## III

For the foregoing reasons, we will affirm.

---

[9] The fact that the parties agree that they intended to submit all contractual disputes—including questions of arbitrability—to arbitration, does not disturb our ability to review whether the SCAI-selected Arbitrator had the authority to resolve their disputes.  That is because the parties' dispute here concerns the identity of the arbitral tribunal and the rules used to select the tribunal, rather than whether any particular dispute is arbitrable.